UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| HARRY BRAXTON | CIVIL ACTION NO. 17-cv-0956 |
| VERSUS | CHIEF JUDGE HICKS |
| RICK NOWLIN, ET AL | MAGISTRATE JUDGE HORNSBY |

### REPORT AND RECOMMENDATION

**Introduction**

Harry Braxton ("Plaintiff") filed a pro se complaint that alleged employment discrimination against the Parish of Natchitoches (his former employer) and Rick Nowlin (his former supervisor). Attorney Bryce Denny later enrolled to represent Plaintiff, and the defendants took Plaintiff's deposition. Defendants then filed a motion for summary judgment based on an asserted lack of evidence to support Plaintiff's claims of racial discrimination. Plaintiff responded by conceding the merits of the motion and voluntarily dismissing his complaint.

Before the court is a Motion for Attorneys' Fees and Costs (Doc. 33) filed by Defendants. They argue that the suit was frivolous and that they are entitled to fees of $36,856 plus $701.10 in costs. Plaintiff does not challenge the request for costs but argues that a fee award is not appropriate. The clerk of court has already taxed the costs. For the reasons that follow, it is recommended that the motion for fees be granted and a fee of $23,000 be awarded.

**Relevant Facts**

Plaintiff was employed by Natchitoches Parish for more than 40 years, with about 25 years as the Head Custodian/Building Maintenance Supervisor. He alleged in his eight-page pro se complaint that his employment was terminated in 2016 for pretextual reasons that were used to cover up intentional racial discrimination, after which he was replaced by a white male who was less qualified. The complaint squarely alleged that Mr. Nowlin had an "intentionally discriminatory animus against him solely because of his race or color (African American, black)" and that Plaintiff had to endure intentionally hostile and insulting harassment.

Plaintiff's complaint alleged race discrimination in violation of Title VII, 42 USC § 1983 (equal protection), and Louisiana employment discrimination statutes found in Title 23. The complaint also alleged that the personnel manual applicable to parish employees was unconstitutional and in violation of anti-discrimination laws. Attorney Denny enrolled to represent Plaintiff about three months after the complaint was filed.

The facts presented in the motion for summary judgment show that Mr. Nowlin, the Parish president, issued Plaintiff a three-page written warning and notice of probation status in 2014. The warning set forth a list of alleged violations of parish policies and failure to perform as required by Plaintiff's position. The violations included absence without notice, personal use of parish facilities to store a motorcycle, destruction of two refrigerators that were being transported, loss of keys and tools, improper storage of equipment, failure to attend staff meetings, wasteful spending, and other matters. Plaintiff was placed on probation for 90 days and notified that additional violations could result in

further discipline, including termination. The warning also included a plan for improvement.

Mr. Nowlin later testified in an affidavit that, despite the written warnings, Plaintiff's work performance continued to decline. Work assignments were incomplete, and Plaintiff brought a personal scooter to the courthouse annex building to work on and store. The straw that broke the camel's back, according to Mr. Nowlin, was in June 2016 when he discovered that Plaintiff turned in a signed payroll sheet claiming to have worked 33 hours of compensatory time over the Memorial Day weekend, even though Plaintiff was working for the Natchitoches Parish Clerk of Court on the same days. Nowlin objected to Plaintiff wanting the Parish to pay him for hours he did not work. The Clerk of Court supported this position with an affidavit in which he testified that he paid Plaintiff $600 to assist with repainting of the clerk's office over that weekend. The $600 check was endorsed and cashed by Plaintiff.

Plaintiff signed his complaint, as well as an affidavit in which he, after being duly sworn by a notary, represented that he had "read all the allegations of fact and I hereby certify that they are true and correct to the best of my personal knowledge, information and belief." Defense counsel asked Plaintiff about this at his deposition, at which Plaintiff was represented by counsel. Plaintiff admitted that his complaint was actually written by a non-lawyer friend. Counsel asked if Plaintiff read the complaint word for word, and he answered, "No, I didn't." Plaintiff was asked about his affidavit certification that all the allegations were true and correct. Plaintiff replied:

> I didn't read most of it. He read it to me and then I looked over it, and I read it with some old eyeglasses on. He read it more to me and that's what I wanted on there.

Plaintiff was asked how, if he didn't read the complaint, he knew everything in it was true. He answered, "Well, I figured he, you know, he wrote it up for me, he did the right thing for me, and that's why I - - we - - we went and filed the lawsuit." He again admitted that he did not read the facts set forth in the complaint.

Plaintiff was asked about his allegations of racial discrimination. He generally denied that he claimed race discrimination; he said only that his firing was wrong or unfair. The relevant portions of the deposition are as follows:

> Q: Okay. Why did you file the lawsuit against Natchitoches Parish Council and Rick Nowlin?
>
> A: Because I was terminated wrong.
>
> Q: What do you mean terminated wrong?
>
> A: Because the reasons of why they got rid of me for nothing.
>
> Q: You didn't agree with the reasons - -
>
> A: No.
>
> Q: - - that they discharged you?
>
> A: No.
>
> Q: Why not?
>
> A: Because I just didn't.
>
> Q: You just didn't?
>
> A: No.

> Q: Okay.
>
> A: Because it ain't nothing I did was wrong because what they say I did wasn't right.
>
> Q: So why do you think they terminated you?
>
> A: I can't say that. I don't know why.
>
> Q: And why do you claim in your complaint that it's because of race if you don't know why?
>
> A: They - - they got rid of me because for some K time and all this, and I know I wasn't stealing no K time. Because the time they got rid of me I worked them days, and I think I was just wasn't treated fair.
>
> Q: So you're not saying it's because you're black, you're saying it's because - -
>
> A: No.
>
> Q: - - you weren't treated fair?
>
> A: No. I ain't saying for I was black, no. I ain't saying that.
>
> Q: Then why are you saying it?
>
> A: I didn't say that. You saying now because I was black. No, I didn't say no race. I didn't put race in there.
>
> Q: What other reason would you file a lawsuit, only because you were terminated wrong or was there some other reason?
>
> A: Because I was terminated wrong.
>
> Q: Okay.

Counsel later returned to the issue of why Plaintiff alleged racial discrimination.

This exchange then occurred:

Q: Because the first you say here is that you're filing a lawsuit against the parish council for race discrimination, but you told me that you're not doing that.

A: Well, you asked me was it race, I said it ain't race, I was fired the wrong way.

Q: So you're not filing this lawsuit against the parish council on the basis of the fact of race discrimination?

A: Well, you could put a little race on with it if you want to because you know - -

Q: Mr. Braxton, you have to tell the truth, you can't - -

A: I'm - - I'm - -

Q: - - switch.

A: - - telling the truth.

Q: So you told me a minute ago that it was not because of race, it's because you were terminated wrong, right?

A: Right.

Q: So are you filing this lawsuit on the basis of race or not?

A: Well, you know, you can - - if you want to say race it's race because like I say, I was fired for somebody else to take my job, and he was white and then, you know, and that's it.

Q: So what are you saying? Why do you think you were fired, because of what?

A: I was fired because of some kind of K time they say I took.

Q: Right.

A: Right.

Q: Right. And you feel that's wrong?

> A: Yeah, because I wasn't stealing no K time.
>
> Q: And you never read this complaint yourself?
>
> A: No.

Later, when Plaintiff was being questioned about the effect of his firing, he mentioned that he no longer felt like working with his hands and repairing things like he did in the past. This exchange then occurred:

> Q: Yeah, but you're not blaming that on the Parish are you?
>
> A: I would say yeah, some of it. Because I know I wasn't terminated the right way, I was terminated the wrong way.
>
> Q: And what do you mean by right way and wrong way?
>
> A: Well, I just wasn't - - you know where they say trying to do - - trying to steal some time and something and I know I wasn't, you know.
>
> Q: So you think that it was unfair?
>
> A: Yeah, it was unfair.
>
> Q: You think the Parish made a mistake?
>
> A: I know they did.
>
> Q: Is that what you mean by terminated the wrong way?
>
> A: Right.
>
> Q: Anything else besides being unfair?
>
> A: No.

Relevant to a claim of a hostile work environment, this discussion took place:

> Q: Do you think Mr. Nowlin treated you unfairly while you worked at the parish?
>
> A: Right.
>
> Q: But you're not saying that it's because of your race, right?
>
> A: No, I ain't saying because of my race, right.
>
> Q: You thought that Mr. Nowlin picked on you for some reason?
>
> A: No, I ain't saying he pick on me. That's nothing I do where I could satisfy him.
>
> Q: You couldn't satisfy him?
>
> A: No.

Counsel also asked Plaintiff about his allegations that the personnel manual was unconstitutional or otherwise unlawful. Plaintiff said that he did not have any complaints about the manual and did not know why it was mentioned in the complaint. Defense counsel returned to the issue later, and counsel for Plaintiff stated that he would stipulate that Plaintiff was not going to assert a claim that the manual was illegal or discriminatory or violated First or Fourteenth Amendment rights.

Defendants filed a motion for summary judgment supported by Plaintiff's deposition, affidavits from Rick Nowlin and the Clerk of Court, a copy of the $600 check, and other exhibits. Defendants argued that Plaintiff could not establish a claim of racial discrimination under any of the relevant statutes and that his attack on the personnel manual was meritless.

Plaintiff responded to the motion for summary judgment by voluntarily dismissing his case. He filed a motion (Doc. 29) in which counsel acknowledged that Plaintiff's deposition testimony was "problematic" to the case because "plaintiff was unequivocal and there was no other evidence sufficient to raise a question of fact in response to the defendants' motion for summary judgment that would override the plaintiff's testimony (and counsel studied the evidence at length)." Counsel acknowledged that the complaint had "shifted from one of race discrimination to one of 'fairness,' which is not actionable as Louisiana is an employment at will state." Therefore, Plaintiff "concede[d] the merits of the defendants' motion for summary judgment" and voluntarily dismissed the case.

**Basis for Fee Award**

Title 42 USC § 1988 provides that in certain federal civil rights actions, including Section 1983 claims, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." A plaintiff may be considered a prevailing party for attorney's fees purposes if he succeeds on any significant issue in the litigation that achieves some of the benefit sought in bringing suit. Hensley v. Eckerhart, 103 S.Ct. 1933, 1939 (1983). A prevailing defendant, on the other hand, may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant. Hensley, 103 S.Ct. at 1937 n. 2.

Title VII also grants the court discretion to award the prevailing party a reasonable attorney's fee. 42 USC 2000e-5(k). In Christiansburg Garment Co. v. EEOC, 98 S.Ct. 694 (1978), a Title VII case that was incorporated into § 1988 jurisprudence through footnote 2 of Hensley, the Supreme Court cautioned that assessing fees against plaintiffs simply

because they do not ultimately prevail would undermine vigorous enforcement of federal law. "Hence, a plaintiff should not be assessed his opponent's attorney's fees unless the court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christiansburg, 98 S.Ct. at 701. "Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required by Christiansburg." Hughes v. Rowe, 101 S.Ct. 173, 179 (1980).[1]

In the context of prevailing defendants, Section 1988 is meant "to protect defendants from burdensome litigation having no legal or factual basis." Fox v. Vice, 131 S.Ct. 2205, 2213 (2011). When determining whether to award fees to defendants, the court considers as factors (1) whether the plaintiff established a prima facie case; (2) whether the defendants offered to settle; and (3) whether the court held a trial on the merits. Myers v. City of West Monroe, 211 F.3d 289, 292 (5th Cir. 2000). These factors are helpful "guideposts," but frivolousness must be judged on a case-by-case basis. Doe v. Silsbee ISD, 440 Fed. Appx. 421, 425 (5th Cir. 2011).

**Analysis**

    **A. Defendants Are Prevailing Parties**

Plaintiff voluntarily dismissed his case when he faced the motion for summary judgment, but that voluntary dismissal does not prevent Defendants from being considered

---

[1] The Louisiana employment discrimination laws invoked by Plaintiff provide that a plaintiff who is found to have brought a frivolous claim shall be held liable to the defendant for reasonable attorney fees. La. R.S. 23:303(B).

prevailing parties for purposes of fees. A defendant in such a situation can still be a prevailing party if he demonstrates that the plaintiff dismissed his case to avoid an unfavorable judgment on the merits. Portillo v. Cunningham, 872 F.3d 728, 740 (5th Cir. 2017); Dean v. Riser, 240 F.3d 505, 508 (5th Cir. 2001). Plaintiff does not argue that Defendants are prevented from being prevailing parties because of his dismissal, and it is plain from Plaintiff's motion to dismiss that he voluntarily dismissed the case because he conceded the merits of the motion for summary judgment. Accordingly, Defendants are prevailing parties.

### B. Defendants Are Entitled to a Fee Award

The first of the guidepost factors is whether the plaintiff established a prima facie case. A Title VII plaintiff may make out a prima facie case for race discrimination by showing that he (1) is a member of a protected group, (2) was qualified for the position at issue, (3) was discharged by the employer, and (4) was replaced by someone outside his protected group. Story v. Gibson, 896 F.3d 693, 698 (5th Cir. 2018). Plaintiff argues that he could have established a prima facie case because he is a racial minority, he was fired, and he was replaced by a white employee. Those basic facts appear to be true, but the impact of this factor is tempered by the fact that Plaintiff did not attempt to actually present a prima facie case when his claims were challenged by the motion for summary judgment.

Defendants represent that they never offered to settle the case, but the Fifth Circuit stated in Myers that this factor is of "questionable value" in determining whether the plaintiff's claims are frivolous. Myers, 211 F.3d at 292. The final factor is whether the

court held a full trial. It did not, given that Plaintiff voluntarily dismissed his suit in advance of any trial setting.

More important than these guidepost factors is that Plaintiff's own testimony demonstrated that his claims were groundless and without any evidentiary basis. Plaintiff may have honestly believed that he was dismissed based on a mistake or in an unfair manner, but he said over and over that he did not believe that his firing was based on his race, which made any establishment of a prima facie case meaningless.

The most Plaintiff offered as evidence of racial discrimination was a brief comment that you might be able to put a little race on it, but that was nowhere near the kind of factual basis that would be needed to even get to trial on a Title VII or Section 1983 claim. That is especially true when the plaintiff denied time and again that he claimed he was fired based on his race.

Plaintiff's counsel states that it is his experience that many older African-Americans are reluctant to directly acknowledge or claim that their race was a factor in an adverse employment decision, even when they have filed a suit based on race discrimination. That may sometimes be the case, but Plaintiff was given repeated opportunities at his deposition to provide a factual basis for his claims of racial discrimination, and he declined to do so at every turn. Whatever his motivation, the fact is that his claims were lacking in an evidentiary basis and, therefore, groundless and frivolous.

The Fifth Circuit has affirmed fee awards to defendants when plaintiffs did not muster any evidence to challenge a motion for summary judgment. <u>DeRamus v. City of Alexandria</u>, 675 Fed. Appx. 408 (5th Cir. 2017). Chief Judge Hicks has also awarded fees

when a plaintiff continued to pursue claims after he knew or should have known of the legal and evidentiary deficiencies in the claim. Adams v. City of Shreveport, 2018 WL 2944430, *6 (W.D. La. 2018) (even if claim was not frivolous when complaint was filed, it became frivolous after discovery and the plaintiff's own deposition testimony undermined the claim). And a fee award has been affirmed even when the frivolous claims were brought by a pro se plaintiff. Blanks v. Vought Aircraft Industries, Inc., 447 Fed. Appx. 532, 533 (5th Cir. 2011).

Plaintiff did not file his complaint as a pauper, and he has not argued that his financial circumstances should excuse him from a fee award, but the facts in the record suggest that Plaintiff may have a difficult time satisfying such a judgment. It is, therefore, questionable whether defendants will be reimbursed for their expenses as a result of a fee award. But the court finds that this case was groundless and, therefore, frivolous to the point that the court should order a fee award to Defendants. If fees were not awarded in a case so plainly lacking in factual support, then it is hard to imagine a case where fees would be warranted based on a case being groundless.

### C. The Amount of the Fee Award

The next issue is the amount of the award. Courts apply a two-step method for determining a reasonable fee award for a prevailing defendant. Cantu Services, Incorporated v. Frasier, 682 Fed. Appx. 339, 343 (5th Cir. 2017), citing Combs v. City of Huntington, 829 F.3d 388, 391 (5th Cir. 2016). The first step is to calculate the lodestar, which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. Combs, 829 F.3d at 392. The court should

exclude all time that is excessive, duplicative, or inadequately documented. Portillo, 872 F.3d at 741. "[T]here is a 'strong presumption' that the lodestar figure is reasonable." Perdue v. Kenny A. ex rel Winn, 130 S.Ct. 1662, 1673 (2010).

The second step is to assess the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) to determine whether an adjustment to the lodestar is warranted.[2]  A district court must provide a reasonably specific explanation for a fee determination, but it need not recite and discuss each of the Johnson factors, so long as the record clearly indicates that the court used the Johnson framework as the basis for its analysis. Cantu, 682 Fed. Appx. at 343, citing Moench v. Marquette Transp. Co. Gulf-Inland, 838 F.3d 586, 596 (5th Cir. 2016).

Defense counsel submits billing records for his firm that total 189.80 hours spent on this matter. Billing rates for the attorneys are $200 per hour, with paralegal work billed at $80 per hour. The total requested lodestar amount is $36,856.

Plaintiff does not challenge the hourly rate or any particular time entries. The conclusion of his memorandum in opposition merely asks that, if the court grants the fee award, the amount be "substantially reduced because of the amount of time allegedly expended on a case that was primarily a *pro se* case." The complaint may have been filed

---

[2] The twelve Johnson factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

pro se, but counsel for Plaintiff entered the case within about three months.  Furthermore, the fact that a plaintiff is pro se does not necessarily mean that defense fees will be less.  In some pro se cases, matters are made more complicated by virtue of the assertion of meritless claims and objections.  The personnel manual claim is an example of that in this case.  It was asserted in the pro se complaint, so Defendants had to spend time defending it.  Counsel for Plaintiff stipulated at the deposition that Plaintiff would not pursue such a claim, but he did not voluntarily dismiss it afterward.  Defense counsel then had to attack the claim in the motion for summary judgment.

     Defense counsel is experienced in litigating employment cases in this district.  The court has reviewed the billing records and, with some exceptions, finds that the time billed was reasonable.  The total hours billed in connection with the motion for summary judgment and related briefs merit an adjustment to assess a reasonable fee that Plaintiff should be required to pay under these circumstances.  The drafting of the motion for summary judgment began on December 10, 2018 and continued through February 27, 2019.  The attorney hours billed in connection with the motion are approximately 88, for a fee of $17,600.  An additional 16.8 hours of attorney time was billed in connection with drafting a reply to Plaintiff's anticipated opposition, with 12.5 hours of that time billed after counsel wrote that he "[r]eceived and reviewed plaintiff's lawyer's email stating no opposition to our MSJ."  The total amount billed in connection with the reply memorandum, which was never filed, was $3,360, with about $2,500 of that billed after receipt of the email from Plaintiff's counsel in which he stated that he would not oppose the motion.

The undersigned finds that the appropriate lodestar amount in this case is less than requested by Defendants. A motion for summary judgment is often the most important aspect of an employment discrimination case that does not go to trial, but the issues in this motion were fairly straightforward and of the kind counsel had significant experience addressing. Some amount of time preparing an anticipated reply may be reasonable under certain circumstances, but the amount of time spent on the anticipated reply in this case, particularly after Plaintiff's counsel conceded he would file no opposition, should be reduced to reflect a more reasonable fee.

On the other hand, Defendants have not requested an award of the approximately $2,000 in out of pocket expenses that their bills indicate were incurred. Title VII and Section 1988 allow an award for expenses incurred by the attorney which are normally charged to a fee-paying client. Those expenses include postage, photocopying, and travel costs. Mota v. University of Texas Houston HSC, 261 F.3d 512, 529 (5th Cir. 2001); DeLeon v. Abbott, 687 Fed. Appx 340, 342 (5th Cir. 2017). A prevailing party is also entitled to an award for time spent litigating a fee claim. Cruz v. Hauck, 762 F.2d 1230, 1233 (5th Cir. 1985). Defendants have not included hours for drafting their fee motion. But about five hours spent on attorney fee issues was billed in connection with the motion for the summary judgment, which is where the fee issue was first presented.

The undersigned finds that, under these circumstances, the appropriate lodestar amount is $23,000. The lodestar amount is presumptively reasonable, and none of the Johnson factors warrants further adjustment.

Accordingly,

It is recommended that the **Motion for Attorneys' Fees and Costs (Doc. 33)** filed by Defendants be granted and a fee of $23,000 be awarded.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 27th day of August, 2019.

Mark L. Hornsby
U.S. Magistrate Judge